1

2

3

4

5

6

7

8              IN  THE  UNITED  STATES  DISTRICT  COURT

9            FOR  THE  EASTERN  DISTRICT  OF  CALIFORNIA

10

11   MARY GENE WOOD, et al.,              No.   CIV.S-04-0897 DAD

12           Plaintiffs,

13      v.                                ORDER

14   THE UNITED STATES OF AMERICA,
     et al.,

15
             Defendants.
16   _____/

17           This matter is before the court on plaintiffs' motion for

18   summary adjudication and the private defendants' motion for summary

19   judgment, or in the alternative summary adjudication, in which the

20   federal defendant has joined.

21           The parties' motions came on for hearing before the

22   undersigned.  Craig Harasek appeared on behalf of plaintiffs Mary

23   Gene Wood, Lannie Wood, Roger Palmer and Denise Palmer.  Dugan Barr

24   appeared on behalf of private defendants Albert H. Newton, Jr.;

25   Michael P. Newton; Michael D. Meiners; Jon H. Meiners; Kelly Lee

26   Meiners; Kathy Ann Kutzer; Albert H. Newton, III; and Ann G. Cane.

                                    1

Yoshinori H.T. Himel appeared on behalf of federal defendant BLM.
For the reasons set forth below, defendants' motion for summary
adjudication will be granted as to the federal claims only and
plaintiffs' motion will be denied.

**BACKGROUND**

Plaintiffs initiated this action to regain access to their
property located in Siskiyou County.  The complaint alleges that
defendant United States Department of the Interior, Bureau of Land
Management ("BLM") entered into a land exchange with the Trust for
Public Lands ("TPL"), a nonprofit land conservation organization,
whereby BLM land adjacent to plaintiffs' property was conveyed to
TPL.  The complaint further alleges that in this exchange BLM
inadvertently failed to reserve rights of way over the public lands
in question, easements by which plaintiffs had a means of access to
their property.  According to the complaint, TPL later conveyed the
adjacent property to the named private defendants who have refused to
recognize plaintiffs' historical means of access to their property
and blocked it.

The complaint alleges seven causes of action.  The first
cause of action is brought against BLM pursuant to the Administrative
Procedures Act ("APA").  More specifically, according to the
complaint, BLM recognized its oversight shortly after its land
exchange with TPL and granted a new right of way to plaintiffs over
the same location.  The private defendants challenged that action, on
the basis that BLM no longer owned the land, and BLM revoked the
grant.  Plaintiffs appealed this decision to the Interior Board of

Land Appeals ("IBLA") which denied the appeal.  Plaintiffs' first cause of action seeks review of that decision by the IBLA.  The second cause of action is also brought against the BLM and alleges a violation of due process.[1]

The remaining claims, the fourth, fifth, sixth and seventh causes of action, are brought by plaintiffs against the private defendants.  Those causes of action are state law claims for quiet title, easement by implication; quiet title, easement by necessity; quiet title by balancing the hardships; and declaratory relief, respectively.[2]

In their motion, plaintiffs seek summary judgment as to the complaint's first, fourth and fifth causes of action.  The private defendants seek summary judgment on the causes of action against them, and BLM has joined in the motion to seek summary judgment in its favor with respect to plaintiffs' APA and due process claims. The approximately 500-page Administrative Record before the Interior Board of Land Appeals ("Administrative Record" or "A.R.") is on file with the court.

---

[1] The third cause of action under the Federal Tort Claims Act also was brought against the BLM but was dismissed by previous order of the court.

[2] The claim for declaratory relief technically is not a cause of action, but a type of remedy.  See Stock West, Inc. v. Confederated Tribes of Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989)("Declaratory Judgment Act ... only creates a remedy and is not an independent basis for jurisdiction."); Weiner v. Klais and Co., Inc., 108 F.3d 86, 92 (6th Cir. 1997)("With regard to Count IV, in which plaintiff seeks declaratory relief, plaintiff has merely asserted a form of relief, not a cause of action.  Plaintiff is not entitled to this relief in the absence of a viable claim.")

**FACTS**[3]

The rights of way over the former public lands in question are two segments of a largely unimproved access road known as Meadow Gulch Road.  The rights of way were initially reserved by BLM in the 1980's.  That reservation was identified as CA 16972.

In 1981 the BLM purchased a separate right of way on Meadow Gulch Road across land owned by the Newtons and yet another right of way across land owned by a railroad company which later would be owned by William Hoblin ("Hoblin") and still later by plaintiffs. Those rights of way are easements known as RE RED 238 and RE RED 239, respectively.

In 1991, BLM issued a temporary use permit identified as CA 27885 to Hoblin granting him access to the rights of way BLM had reserved to itself with CA 16972.  Hoblin was plaintiffs' immediate predecessor in interest with respect to the land now owned by plaintiffs.  Hoblin conveyed that land to plaintiffs later in 1991. There was no mention of CA 27885 between Hoblin and plaintiffs in connection with that transaction.

In 1995, BLM sent a letter to Hoblin advising that his temporary use permit was about to expire.  The unopened letter was returned to BLM.  The CA 27885 use permit therefore expired by its own terms on December 31, 1995.

Thereafter, the BLM-TPL land exchange occurred, with the conveyance of the public lands from BLM to TPL taking place from 1996

---

[3] These basic facts are undisputed and set forth in more detail in the IBLA's decision. (A.R. at 1-9.)

through 1998.  The conveyance documents made no mention of the rights of way BLM had reserved to itself with CA 16972 and granted to Hoblin with CA 27885.  TPL then conveyed the former public lands to the Newtons sometime thereafter.

On or around June 4, 1998, the Newtons advised plaintiffs that plaintiffs would not be granted access over the rights of way at issue (i.e. those which BLM initially reserved to itself as CA 16972; granted to Hoblin as CA 27885; and which expired in 1995 after Hoblin conveyed his land to plaintiffs).

In 1999, plaintiffs sought and received from the BLM a grant over the rights of way.  That grant was identified as CA 40695.  However, the Newtons appealed that action and the BLM revoked CA 40695 on August 2, 1999.  After an appeal to the IBLA, which was denied, plaintiffs initiated this action.

**ANALYSIS**

The court will first address plaintiffs' APA claim since it is subject to a different standard of review than plaintiffs' other claims.  The court will then address plaintiffs' due process claim and the state law claims.

**A.    APA Claim**

**1.  Legal Standards**

The APA's standard of review is a narrow one.  Once an agency has taken final agency action, a reviewing court must assess whether the agency's action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.  5 U.S.C. § 706(2)(A); Mt. St. Helens Mining and Recovery Ltd. Partnership v.

5

1 United States, 384 F.3d 721, 727 (9th Cir. 2004); Wileman Bros. &

2 Elliott, Inc. v. Espy, 58 F.3d 1367, 1374-75 (9th Cir. 1995), rev'd

3 on other grounds, 521 U.S. 457 (1997).  "The focal point for judicial

4 review should be the administrative record already in existence, not

5 some new record made initially in the reviewing court."  Florida

6 Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985)(internal

7 alteration and citation omitted).  A reviewing court's "task is not

8 to decide which among several competing interpretations best serves

9 the regulatory purpose.  Rather, the agency's interpretation must be

10 given controlling weight unless it is plainly erroneous or

11 inconsistent with the regulation."  Thomas Jefferson Univ. v.

12 Shalala, 512 U.S. 504, 512 (1994) (internal quotations and citation

13 omitted).  See also Information Providers' Coalition for Defense of

14 the First Amendment v. F.C.C., 928 F.2d 866, 869-70 (9th Cir.

15 1991)("Judicial review of an agency fact-finding regularly proceeds

16 under the rubric of 'substantial evidence' ....  This does not mean a

17 large or considerable amount of evidence, but rather only 'such

18 relevant evidence as a reasonable mind might accept as adequate to

19 support a conclusion.'")

20 **2.   Analysis of APA Claim**

21 Plaintiffs argue that two federal statutes, 43 U.S.C. §

22 1746 and 43 U.S.C. § 1166, permit the BLM to retrospectively change

23 the conveyance documents involved in the BLM-TPL land exchange to

24 include the rights of way that, according to plaintiffs, were

25 mistakenly omitted from those documents.  That argument is

26 unpersuasive.

43 U.S.C. § 1746 provides:

> The Secretary may correct patents or documents of
> conveyance issued pursuant to section 1718 of
> this title or to other Acts relating to the
> disposal of public lands where necessary in order
> to eliminate errors.   In addition, the Secretary
> may make corrections of errors in any documents
> of conveyance which have heretofore been issued
> by the Federal Government to dispose of public
> lands.   Any corrections authorized by this
> section which affect the boundaries of, or
> jurisdiction over, land administered by another
> Federal agency shall be made only after
> consultation with, and the approval of, the head
> of such other agency.

Implementing regulations flesh out this statute.  More specifically,

43 C.F.R. § 1865.0-5(b) defines the term "error" as follows:

> "Error" means the inclusion of erroneous
> descriptions, terms, conditions, covenants,
> reservations, provisions and names or the
> omission of requisite descriptions, terms,
> conditions, covenants, reservations, provisions
> and names either in their entirety or in part, in
> a patent or document of conveyance as a result of
> factual error.  This term is limited to mistakes
> of fact and not of law.

Thus, § 1746 permits the BLM to "correct" the conveyance documents

regarding the BLM-TPL land exchange but only to the extent the

conveyance involved "mistakes of fact."

43 U.S.C. § 1166 provides that "[s]uits by the United

States to vacate and annul any patent shall only be brought within

six years after the date of the issuance of such patents."  The

parties agree that such a lawsuit, which is different than a

unilateral administrative action such as that permitted by § 1746,

provides the United States with a vehicle to correct patents issued

/////

through mistake or error of law.  As the IBLA has explained in a

published decision:

> An allegedly improper conveyance ordinarily
> cannot be challenged or remedied by the
> Department after legal title has passed.
> However, the Secretary may recommend appropriate
> judicial action to cancel the conveyance and
> regain title if the circumstances warrant.  H. B.
> Baldwin, 37 IBLA 215 (1978).  See Diamond Coal
> and Coke Co. v. United States, 233 U.S. 236
> (1914).  Accordingly, the only possible action
> left to the Department in this case is to
> consider whether it would merit a recommendation
> to the Attorney General that an action be
> commenced to nullify the conveyance.

George Antunovich, 76 IBLA 301, 308-09 (1983)(footnote omitted).

In its decision, the IBLA thoroughly addressed 43 U.S.C. §§

1166 and 1746 and found no mistake, either of fact or law, requiring

correction in connection with the conveyance at issue.  Plaintiffs

argue that there was ample evidence before the IBLA, which it

ignored, demonstrating that the BLM and TPL in no way intended for

their land exchange to leave plaintiffs landlocked but instead

intended to protect adjacent landowners and the rights of third

parties such as plaintiffs.  However, the evidence referred to by

plaintiffs does not establish any kind of mistake, either in fact or

law, at the time of the conveyance.

The IBLA reasonably found that while Hoblin received the

temporary use permit in 1991, that permit was not mentioned in

connection with the transaction between plaintiffs and Hoblin which

occurred later that year.  The permit expired in 1995.  The land

exchange between BLM and TPL occurred in good faith over the course

of time from 1996 through 1998, well after the permit and its

accompanying rights of way had expired.  Similarly, the TPL and

Newtons later negotiated in good faith for the Newtons to take the

former public lands unencumbered.

The IBLA also reasonably found that at the time of the land

exchange BLM had no reason to know of plaintiffs' desire to access

the rights of way.  Other than the initial contact with Hoblin in

1991 resulting in CA 27885, the BLM had not heard from any owner

associated with the land until December of 1998 when plaintiff Mary

Wood telephoned BLM to get access permission from the government in

response to the Newtons blocking of plaintiffs' access.  Nothing in

the record suggests any attempt by plaintiffs between their

acquisition from Hoblin in 1991 and Ms. Wood's telephone call in

December of 1998 to assure that they had arranged for access to their

land.  In making their deal with Hoblin, plaintiffs apparently

assumed that the land came with unfettered, indefinite access.

Regrettably for plaintiffs, that assumption was misplaced.

Under these circumstances, substantial evidence supports

IBLA's conclusion that:

> BLM and TPL mutually agreed and intended to
> exchange fee title to the lands fully and
> properly described in the conveyance documents,
> for lawful purposes stated, and they accomplished
> their intent by duly executed instruments.

> ***

> BLM and TPL achieved precisely what they intended
> to accomplish in the exchange transactions, based
> on the facts as they then existed.

(A.R. at 00006, 00008.)

/////

1    The after-fact-evidence in the Administrative Record cited

2    by plaintiffs does not undermine the IBLA's conclusion.  The court

3    recognizes that the record includes documents reflecting BLM's

4    response to plaintiffs' concerns voiced in late 1998, the issuance of

5    CA 40695 and BLM's decision revoking CA 40695.  (A.R. at 00312,

6    00313, 00396-97, 00406-07.)  In various places, those documents refer

7    to a belief on behalf of the BLM that, in retrospect, it actually

8    intended to reserve an interest in the rights of way over the land it

9    conveyed to TPL.  However, it was reasonable for the IBLA to reject

10   the notion that these documents evidenced any mistake at the time of

11   the conveyance.  A reasonable interpretation of that evidence is that

12   it merely documents the feelings of local BLM officials in 1999, well

13   after the land exchange and at a time when they simply were trying to

14   help plaintiffs extricate themselves from their predicament.  While

15   that attempt to assist plaintiffs appears to have been well-

16   intentioned, it had no basis in the law and could not go very far in

17   rescuing plaintiffs from the position in which they found themselves.

18   Indeed, the well-intentioned issuance of CA 40695 remained in place

19   only approximately two months before it was revoked.

20       Plaintiffs also cite various documents in the record

21   supporting the general assertion that in land exchanges, such as the

22   one concerned here, the BLM had a general policy of protecting the

23   interests of third parties in valid existing rights.  (A.R. at 00081-

24   85, 00098-101, 00103-104, 00117-127.)  Plaintiffs cite still other

25   documents in support of the contention that the BLM had some sort of

26   institutional knowledge that the land owned by Hoblin and later

plaintiffs was in private hands; that at one time rights of way to

that land were issued in the form of CA 16972 and CA 27885; and that

the very reason Hoblin sought CA 27885 was to prepare his land for

sale.  However, these documents relied upon by plaintiffs are not

evidence of any mistake.  Rather, the documents tend to show that had

plaintiffs communicated with BLM at any time between 1991 and 1998 to

ensure continued access to their property, BLM likely would have done

what it could to help them consistent with its policies to do so.

The IBLA stated as much in its decision when it observed: "We have no

doubt that BLM would have acted to preserve a right of access under

CA 16972, had reason to do so timely appeared ...."  (A.R. at 00006.)

However, as noted above, plaintiffs took no timely steps to present

such a reason to BLM and the BLM, with its vast array of

responsibilities with respect to managing lands, could not have been

expected to scour its records in search thereof.  None of the

documents in the Administrative Record change the basic, dispositive

facts of the APA claim: that plaintiffs failed to renew the Hoblin

temporary use permit or seek some other type of access from BLM and

that when BLM exchanged lands with TPL the land conveyed to TPL was

unencumbered.  Substantial evidence supports the IBLA's decision that

there was no mistake at the time of the BLM-TPL exchange.

There is one additional aspect to plaintiffs' APA claim.

It concerns BLM's 1997 conveyance to the Newtons of a right of way

over RE RED 239 at or around the same time the BLM conveyed the

public lands to TPL which then conveyed the lands to the Newtons.

RE RED 239 was purchased by BLM in 1981 and goes over plaintiffs'

1  property.  Plaintiffs contend that in 1997 BLM actually intended to

2  give RE RED 239 back to plaintiffs because it was on plaintiffs' land

3  and BLM had no reason to access the road, it having conveyed the

4  public lands in that area to TPL.  That contention is misplaced.  The

5  court has examined the quitclaim deed at issue, the one by which the

6  United States granted RE RED 239 to the Newtons.  The deed plainly

7  states that the United States no longer has an interest in the public

8  lands "because said property was conveyed out of public ownership by

9  exchange" and that the United States therefore is conveying RE RED

10  239 "to the owners of said property," the Newtons.  (A.R. at 00146.)

11  Plaintiffs' reading of the quitclaim deed is unsupported by the

12  language of the deed itself.  The IBLA's decision not to convey RE

13  RED 239 back to plaintiffs is supported by substantial evidence.

14  Plaintiffs' argument to the contrary must be rejected.

15         For all of these reasons, the court finds that the federal

16  defendant is entitled to summary judgment on plaintiffs' APA cause of

17  action because the decision of the IBLA was neither arbitrary,

18  capricious, an abuse of discretion nor otherwise not in accordance

19  with the law.  Substantial evidence supports the IBLA decision.  In

20  reaching this result the court is mindful that it is not to

21  substitute its judgment for that of the IBLA.  This is especially the

22  case where, as here, "the challenged decision implicates substantial

23  /////

24  /////

25  /////

26  /////

agency expertise." <u>Mt. Graham Red Squirrel v. Espy</u>, 986 F.2d 1568, 1571 (9th Cir. 1993).[4]

### B.   Other Claims

#### 1.   Legal Standards

Plaintiffs' remaining causes of action are subject to the more typical summary judgment standards set forth in Federal Rule of Civil Procedure 56.  More specifically, summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Owen v. Local No. 169</u>, 971 F.2d 347, 355 (9th Cir. 1992).

> The party moving for summary judgment
> always bears the initial responsibility of
> informing the district court of the basis for its
> motion, and identifying those portions of "the
> pleadings, depositions, answers to
> interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of
> material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Celotex Corp.</u>, 477 U.S. at 323.  Indeed, summary judgment should be entered, after

---

[4] The private and federal defendants also raise a number of procedural challenges to plaintiffs' APA claim.  The court does not reach those arguments because, as just explained, the BLM is entitled to summary judgment with respect to the APA claim on the merits.

13

adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will

bear the burden of proof at trial.  See id. at 322.  "[A] complete

failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial."  Id.

In such a circumstance, summary judgment should be granted, "so long

as whatever is before the district court demonstrates that the

standard for entry of summary judgment, as set forth in Rule 56(c),

is satisfied."  Id. at 323.

        If the moving party meets its initial responsibility, the

burden then shifts to the opposing party to establish that a genuine

issue as to any material fact actually does exist.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also

First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89

(1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th

Cir. 1979).  The opposing party must demonstrate that the fact in

contention is material, i.e., a fact that might affect the outcome of

the suit under the governing law, and that the dispute is genuine,

i.e., the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Thus, the

"purpose of summary judgment is to 'pierce the pleadings and to

assess the proof in order to see whether there is a genuine need for

/////

trial.'"   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)
advisory committee's note on 1963 amendments).

     In resolving the summary judgment motion, the court
examines the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any.   Rule
56(c); see also SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th
Cir. 1982).   The evidence of the opposing party is to be believed,
Anderson, 477 U.S. at 255, and all reasonable inferences that may be
drawn from the facts placed before the court must be drawn in favor
of the opposing party.   Matsushita, 475 U.S. at 587 (citing United
States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also United
States v. First Nat'l Bank of Circle, 652 F.2d 882, 887 (9th Cir.
1981).   Nevertheless, inferences are not drawn out of the air, and it
is the opposing party's obligation to produce a factual predicate
from which the inference may be drawn.   See Richards v. Nielsen
Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,
810 F.2d 898, 902 (9th Cir. 1987).

     Finally, "[a] scintilla of evidence or evidence that is
merely colorable or not significantly probative does not present a
genuine issue of material fact" precluding summary judgment.   Addisu
v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).   See also
Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).
On summary judgment the court is not to weigh the evidence or
determine the truth of the matters asserted but must only determine
whether there is a genuine issue of material fact that must be
resolved by trial.   See Summers, 127 F.3d at 1152.   Nonetheless, in

1   order for any factual dispute to be genuine, there must be enough

2   doubt for a reasonable trier of fact to find for the plaintiff in

3   order to defeat a defendant's summary judgment motion.  See Addisu,

4   198 F.3d at 1134.

5               **2.  Analysis of Due Process Claim**

6               Plaintiffs allege that their due process rights were

7   violated because they did not receive notice of the land exchange

8   between BLM and TPL.  They argue that as a result they were denied

9   any opportunity to be heard on the matter of access to their

10  property.  However, as the IBLA recognized, the BLM published notice

11  of the exchange pursuant to 43 C.F.R. § 2201.2(a), which requires

12  publication of a public notice describing a land exchange proposal in

13  the vicinity of the affected properties and a public comment period.

14  The fact and adequacy of this publication is undisputed.  Therefore,

15  sufficient notice was given via the applicable public notification

16  requirements.

17              Plaintiffs continue to suggest that they were entitled to

18  personal notice.  While the BLM mailed notice of the exchange to

19  various adjacent property owners, plaintiffs maintain they never

20  received notice in the mail.  However, plaintiffs cite no authority

21  requiring personal notice.  For example, they do not attempt to argue

22  that they were "authorized users" under 43 C.F.R. § 2201.2(a) such

23  that personal notice was required.  They simply assert, as alleged in

24  their complaint, that the BLM should have personally notified them of

25  the exchange since it was obvious plaintiffs had been using their

26  land and the rights of way and therefore would be impacted by the

1  exchange.  While plaintiffs no doubt would have appreciated personal
2  notice, it was not required under the law.

3      Moreover, plaintiffs' due process claim is cognizable only
4  if there is a recognized property interest at stake.  <u>Board of</u>
5  <u>Regents v. Roth</u>, 408 U.S. 564, 569 (1972); <u>Coakley v. Murphy</u>, 884
6  F.2d 1218, 1220 (9th Cir. 1989).  Plaintiffs argue that the "use and
7  enjoyment" of their land is the property interest involved here.
8  However, plaintiffs cite no authority in support of the somewhat
9  novel proposition that a denial of use and enjoyment under the unique
10 circumstances presented here rises to constitutional proportions.
11 <u>Cf</u>. <u>Harris v. County of Riverside</u>, 904 F.2d 497, 503 (9th Cir. 1990)
12 (holding that loss of use and enjoyment of business space as a result
13 of residential re-zoning was a deprivation of property interest that
14 may be taken only in accordance with Due Process Clause).  For these
15 reasons, BLM is entitled to summary judgment on plaintiffs' due
16 process claim.

17                     **3.    State Law Claims**

18      Having disposed of the two federal claims which are brought
19 against BLM only, only state law claims remain.  "Under 28 U.S.C. §
20 1367(c)(3) a district court may elect, in its discretion, not to
21 exercise supplemental jurisdiction over state claims if it has
22 dismissed the original jurisdiction federal claims."  <u>Binder v.</u>
23 <u>Gillespie</u>, 184 F.3d 1059, 1066 (9th Cir. 1999)(citing <u>Fang v. United</u>
24 <u>States</u>, 140 F.3d 1238, 1241 (9th Cir. 1998) and <u>Voight v. Savell</u>, 70
25 F.3d 1552, 1565 (9th Cir. 1995)).  "[I]n the *usual* case in which
26 federal-law claims are eliminated before trial, the balance of

                                    17

1  factors ... will point toward declining to exercise jurisdiction over

2  the remaining state law claims."  Gini v. Las Vegas Metro. Police

3  Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994)(quoting Schneider v. TRW,

4  Inc., 938 F.2d 986, 993 (9th Cir. 1991)).

5       Here, the circumstances are somewhat unusual given the age

6  of this case.  The parties also have expressed a desire to complete

7  the resolution of this lengthy and costly dispute in a timely

8  fashion.  Therefore, in its discretion the court will exercise its

9  supplemental jurisdiction to adjudicate plaintiffs' state law claims.

10 On the other hand, as explained below the court finds that neither

11 party is entitled to summary judgment on plaintiffs' easement by

12 implication, easement by necessity, and balancing the hardships

13 claims at this time on this record.

14      An easement by implication and easement by necessity are

15 both a type of implied easement.  Under California law, an easement

16 by implication has three requirements: (1) common ownership of a

17 parcel and a transfer of a portion of that parcel to another (i.e., a

18 "separation of title"); (2) before that separation takes place, the

19 use which gives rise to the easement shall have been so long

20 continued and so obvious as to show that it was intended to be

21 permanent; and (3) the easement must be reasonably necessary to the

22 beneficial enjoyment of the land granted.  Moores v. Walsh, 38 Cal.

23 App. 4th 1046, 1049, 45 Cal. Rptr. 2d 389, 390 (1995), Mikels v.

24 Rager, 232 Cal. App. 3d 334, 357, 284 Cal. Rptr. 87, 99 (1991);

25 Leonard v. Haydon, 110 Cal. App. 3d 263, 266, 167 Cal. Rptr. 789, 791

26 (1980).  Somewhat similar to an easement by implication,

> An easement by way of necessity arises by
> operation of law when it is established that (1)
> there is a strict necessity for the right-of-way,
> as when the claimant's property is landlocked and
> (2) the dominant and servient tenements were
> under the same ownership at the time of the
> conveyance giving rise to the necessity.

Kellog v. Garcia, 102 Cal. App. 4th 796, 803, 125 Cal. Rptr. 2d 817,

823 (2002)(quoting Moores, 38 Cal. App. 4th at 1049, 45 Cal. Rptr. 2d

at 391).  Accord Roemer v. Pappas, 203 Cal. App. 3d 201, 205-07, 249

Cal. Rptr. 743, 745-47 (1988).  These inquiries set out above with

respect to both types of easements are obviously fact-intensive.

Here, there appears to be no real dispute as to the element

of common ownership since the federal government historically owned

the parcels in question.  See Kellog v. Garcia, 102 Cal. App. 4th at

809, 125 Cal. Rptr. at 826; H. Miller & M. Starr, Cal. Real Estate §

15:20 n.7 (3d. ed. 2006)("The common ownership requirement can extend

many years into the past, including government ownership, with

transfer of title through a government patent.")  However, with

respect to the easement by implication claim, there is disputed and

conflicting evidence as to whether there was such continued and

obvious use of the parts of the road at issue before the land

exchange so as to demonstrating that the use of the road was intended

to be permanent.  While in addressing questions of intent the IBLA's

decision (see A.R. 00008), was not arbitrary and capricious for

purposes of review under the APA, the court is unable to conclude on

this record that no reasonable jury would find otherwise in

considering plaintiffs' state law claims.  In light of these

remaining genuine issues of material fact regarding the key matter of

intent, summary judgment is inappropriate at this time on plaintiffs'

claim for easement by implication.  See Mikels, 232 Cal. App. 3d at

357, 284 Cal. Rptr. at 99 ("An implied easement may arise when, under

certain specific circumstances, the law implies an intent on the part

of the parties to a property transaction to create or transfer an

easement even though there is no written document indicating such an

intent."); County of Los Angeles v. Bartlett, 203 Cal. App. 2d 523,

530, 21 Cal. Rptr. 776, 780 (1962)("The purpose of the doctrine of

implied easements is to give effect to the *actual intent* of the

parties as shown by all the facts and circumstances.").

        The court is also unable to resolve the "reasonably

necessary" issue on the basis of the present record.  Neither side

has presented evidence as to whether plaintiffs, as the parties

claiming an easement, can at a reasonable cost create substitute

access of some kind.  See Leonard, 110 Cal. App. 3d at 269, 167 Cal.

Rptr. at 793 ("The test of necessity is whether the party claiming

the right can, at reasonable cost, create a substitute on his own

estate.").  Without additional evidence regarding the logistics and

costs of any substitute means of access, the court also cannot

resolve this issue in favor of any party.

        Regarding the easement by necessity claim, the close

question of whether plaintiffs are indeed landlocked also is not

capable of resolution on this record.  While plaintiffs have access

to one of their parcels by way of what is referred to as the "north

easement," there is a serious factual dispute as to whether

plaintiffs can move from that parcel to their adjoining parcel.  The

square parcels touch only at a corner and that intersection is apparently located in rugged country.  The facts regarding the extent to which plaintiffs can move from one parcel to the other at the corners in practice as well as in theory, require further development.  The easement by necessity inquiry also requires an examination of intent.  <u>See</u> <u>County of Los Angeles</u>, 203 Cal. App. 2d at 530, 21 Cal. Rptr. at 780 ("Implied easements, like ways by necessity, arise from circumstances affording the basis for a finding that the parties intended to create the easement.")  A court must be especially cautious in considering summary judgment where issues of intent or motivation are involved.  <u>Dytrt v. Mountain State Tel. & Tel. Co.</u>, 921 F.2d 889, 996 (9th Cir. 1990); <u>see also</u> <u>Harris v. Itzhaki</u>, 183 F.3d 1043, 1051 (9th Cir. 1999) (questions of intent must often be resolved by a jury); <u>Fonda v. Gray</u>, 707 F.2d 435, 438 (9th Cir. 1983)(questions of intent may not always be amenable to disposition on summary judgment).  That does not mean, however, that summary judgment is not available in such cases since there must still be some indication that the party opposing summary judgment can produce sufficient evidence to enable him to reach the jury.  <u>Dytrt</u>, 921 F.2d at 996.  Without further briefing at the very least, the court finds itself presently unable to resolve this claim due to the apparent existence of disputed facts regarding intent evidenced in the record.

Finally, there is plaintiffs' balancing the hardships claim.  As a general matter, "[t]he doctrine of balancing the relative hardships of the parties may be applied to determine whether

1  to grant an injunction or to quiet title to an easement." Field-

2  Escandon v. Demann, 204 Cal. App. 3d 228, 237, 251 Cal. Rptr. 49, 55

3  (1988).  "In exercising [its] discretion, and in weighing the

4  relative hardships, the court should consider various factors."

5  Field-Escandon, 204 Cal. App. 3d at 238, 251 Cal. Rptr. at 55

6  (listing factors).  Plaintiffs have not moved for summary judgment on

7  this claim.  While defendants have so moved, they have devoted very

8  brief attention to the claim in their motion.  Given the very limited

9  extent to which the parties have addressed this claim, which too

10 entails a fact intensive inquiry, the court finds that the issue is

11 not ripe for adjudication by way of summary judgment at this time.

12                              **CONCLUSION**

13     Accordingly, for the reasons set forth above, IT IS HEREBY

14 ORDERED that:

15     1.  The defense motion for summary adjudication is granted

16 only with respect to the APA and due process causes of action.  The

17 motion is denied in all other respects.

18     2.  The APA and due process causes of action and defendant

19 BLM are dismissed.

20     3.  Plaintiffs' motion for summary judgment, or in the

21 alternative summary adjudication, is denied.

22     4.  A status conference is **SET** for **November 17, 2006, at**

23 **10:00 a.m.**  At that time the parties shall be prepared to discuss the

24 further scheduling of this case to resolve plaintiffs' claims of

25 /////

26 /////

1  easement by implication, easement by necessity, and balancing the

2  hardships.

3  DATED: September 28, 2006.

4

5                                      DALE A. DROZD
                                       UNITED STATES MAGISTRATE JUDGE
6

7  DAD:th
   DDad1\orders.consent\wood0897.msj.order.v2
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26